TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000662-KB

MARC ALAN WELLS                                         MOVANT

V.                             IN SUPREME COURT

KENTUCKY BAR ASSOCIATION                        RESPONDENT

## OPINION AND ORDER

Marc Alan Wells was admitted to the practice of law on October 1, 1975. Wells's bar roster address is 209 W. Main Street, Princeton, Kentucky 42445, and his Kentucky Bar Association (KBA) member number is 75747.

Pursuant to Supreme Court Rule (SCR) 3.480(2), Wells moves this Court to impose a suspension of sixty-one days, probated for one year with conditions, for violation of SCR 3.130(1.15)(a), SCR 3.130(1.15)(d), SCR 3.130(8.1)(b), and SCR 3.130(8.4)(c). The KBA has no objection to Wells's motion.

### I. BACKGROUND.

On September 7, 2012, Wells conducted a closing involving the sale of real estate from the Hintons to the Van Hoosers. In connection with that

closing, Wells received a check from the Van Hoosers in the amount of $4,927.00 and a wire transfer from their mortgage company in the amount of $128,932.00. The check and wire transfer were deposited into Wells's escrow account. At the time of the closing, the Hintons had a $65,771.47 mortgage, which was held by Wells Fargo. Wells states that he: placed a check drawn on his escrow account in that amount in a FedEx envelope; properly addressed the envelope to Wells Fargo; and deposited the envelope in a FedEx drop box. However, according to Wells, FedEx did not pick up or deliver the envelope to Wells Fargo, and he did not learn that the Hintons' mortgage had not been paid until sometime in November 2012. When Wells learned that the mortgage had not been paid, he paid the delinquency of $2,936.28 and the revised payoff amount.

Wells admits that there were insufficient funds in his escrow account in September 2012 to cover the check he wrote to pay the Hintons' mortgage. Wells also admits that, in order to cover the check he wrote in November 2012, he deposited personal funds into his escrow account. Finally, Wells admits that he borrowed $75,000.00 from a friend and deposited that amount into his escrow account in order to reimburse another client in an unrelated matter. Wells has repaid that loan.

Based on the preceding, the Inquiry Commission issued a Complaint, charging Wells with violating SCR 3.130(1.15)(b), which states that:

2

> Upon receiving funds or other property in which a client has an interest, a lawyer shall promptly notify the client. Except as stated in this Rule or otherwise permitted by law or by agreement with the client a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and, upon request by the client, shall promptly render a full accounting regarding such property.

The Inquiry Commission also charged Wells with violating SCR 3.130(1.15)(d), which states: "A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for that purpose." Finally, the Inquiry Commission charged Wells with violating SCR 3.130(8.4)(c) which states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Following receipt of Wells's response to the Complaint, Bar Counsel made several requests for additional information. Notably, Bar Counsel requested information on July 24, 2014, stating that a response was due by August 5, 2014. When Wells failed to respond, Bar Counsel sent a second request on October 2, 2014, stating that a response was due by October 16, 2014. On October 14, 2014, Wells sent an email to Bar Counsel confirming a phone conversation they had regarding Wells's trial preparation and stating that the requested information would be forthcoming by October 29, 2014. On October 29, 2014, Wells sent Bar Counsel another email indicating that he was again in trial preparation, and he would supply requested information by the end of the week of November 10, 2014. Because of Wells's dilatory response to

3

Bar Counsel's request for information, he was charged with violating SCR 3.130(8.1)(b), which states that a lawyer shall not "fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority."

As noted above, Wells has admitted to violating the applicable ethical rules. He and Bar Counsel have entered into a negotiated settlement that provides for a sixty-one day suspension, probated for one year. Wells's probation is contingent on: (1) receipt of no further disciplinary charges; (2) completion of the Ethics and Professionalism Enhancement Program (EPEP); (3) timely payment of KBA dues; (4) timely satisfaction of all continuing legal education requirements; and (5) payment of all costs associated with the investigation and prosecution of this matter. The recommended sanction has been reviewed and approved by the Chair of the Inquiry Commission and a Past President of the KBA.

## II. ANALYSIS.

In support of its position that the agreed to discipline is appropriate, the KBA notes that Wells has not been a party to any prior disciplinary proceedings. The KBA also cites to *King v. Kentucky Bar Ass'n*, 440 S.W.3d 378 (Ky. 2014); *Kentucky Bar Ass'n v. Francis*, 439 S.W.3d 750 (Ky. 2014); *Son v. Kentucky Bar Ass'n*, 398 S.W.3d 432 (Ky. 2013); and Section 9.32 of the American Bar Association Standards for Imposing Lawyer Sanctions (the ABA

Standards). Having reviewed the cited cases and section of the ABA Standards, we agree that the proposed sanction is appropriate.

In *King*, King deposited client funds in two separate cases into his escrow account pending resolution of Medicaid liens. When the lien issues were resolved, King distributed the funds to his clients. However, in the interim, King failed to maintain sufficient funds in his escrow account to cover payments to his clients and/or Medicaid. He also used money from his escrow account to pay personal expenses. 440 S.W.3d at 379-380. King, who had previously received a public reprimand with conditions, was suspended for 181 days, with sixty-one days to serve, the remainder being probated for two years subject to several conditions. *Id.* at 380-81.

In *Francis*, Francis wrote several checks from his escrow account that were returned for insufficient funds. 439 S.W.3d at 751. He also took a fee from a client, failed to perform any work, and failed to refund the fee when asked to do so. *Id.* at 752. Finally, Francis failed to respond to either of the complaints and to requests for information from Bar Counsel. *Id.* at 752-53. Pursuant to the KBA's recommendation, and noting that Francis had been privately reprimanded on two prior occasions, this Court suspended Francis for 181 days. *Id.* at 753.

In *Son*, Son negotiated a $100,000 settlement for a client in a personal injury claim. 398 S.W.3d at 433. He deposited the settlement proceeds in his escrow account, paid himself his one-third fee, and paid his client $30,000. *Id.*

Son kept the remainder in his escrow account to pay his client's unpaid medical bills. *Id.* However, Son failed to negotiate with the medical services providers and, when he failed to respond to his client's requests for information, she retained new counsel. *Id.* Son forwarded the remainder of the client's money to the new attorney, but he had to deposit personal funds into the escrow account to cover the check. *Id.* Furthermore, during the time between the settlement and the time he forwarded that check, Son failed to maintain sufficient funds in his escrow account to pay either the client or her medical bills. *Id.* This Court approved of and imposed the thirty-day sanction, probated for two years with conditions, which Son and the KBA had negotiated. *Id.* at 434-35.

Finally, we note that, although not binding, the ABA Standards "can at times serve as persuasive authority." *Anderson v. Kentucky Bar Ass'n,* 262 S.W.3d 636, 639 (Ky. 2008). Here, we find that Section 9.32, which notes that a lack of a history of discipline and the effort to make amends may be considered as mitigating factors, is persuasive. Wells has no history of prior discipline in more than forty years of practice. Furthermore, when he recognized the issue with regard to the Hintons' mortgage, Wells took the necessary steps to rectify the situation. These are laudable attributes. However, they do not completely excuse Wells's failure to maintain an adequate balance in his escrow account, his failure to refrain from co-mingling client and personal funds, and his failure to timely respond to requests for information

6

from Bar Counsel. Therefore, we agree with the KBA that a sixty-one day suspension, probated for one year with conditions, is appropriate.

ACCORDINGLY, IT IS ORDERED THAT:

1. Marc Alan Wells, KBA Member No. 75747, is suspended from the practice of law for sixty-one days, probated for a period of one year from the date of the Court's Order on the condition that he comply with the remainder of this Order;

2. Wells shall not receive any charges of professional misconduct during the probationary period;

3. Wells shall attend at his own cost and successfully complete the KBA's EPEP within one year of this Court's Order, and Wells shall not apply for CLE credit for his attendance at that program. Furthermore, Wells shall provide an appropriate release form so that his CLE records can be reviewed for one year following his completion of that program;

4. Wells shall timely pay his KBA membership dues and satisfy all continuing legal education requirements;

5. Pursuant to SCR 3.450, Wells is directed to pay all costs associated with this disciplinary proceeding, certified to be in the sum of $446.30, for which execution may issue from this Court upon finality of this Opinion and Order;

6. In the event Wells violates any of the terms of probation stated herein, the KBA may file a motion with the Court requesting the issuance of an

order directing Wells to show cause why the sixty-one day suspension should not be imposed; and

7. If Wells fully complies with the terms of this Opinion and Order, the suspension and all terms of probation shall be terminated at the end of the probationary period.

Minton, C.J., Hughes, Keller, VanMeter, Venters and Wright, JJ., concur. Cunningham, J., not sitting.

ENTERED: February 16, 2017.

_____
CHIEF JUSTICE

8